**Nano MALDONADO, Plaintiff–Appellant,**

v.

**Tony HARRIS, in his capacity as Acting Director of the California Department of Transportation,\* Defendant–Appellee.**

No. 03–15007.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2004.

Filed June 4, 2004.

---

\* Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Tony Harris, the Acting Director of Caltrans, has been substituted as Appellee for his predecessor, Jeff Morales. The Clerk will revise the docket in this case to reflect the substitution.

Dennis Scott Zell, Janet Fogarty & Associates, Burlingame, CA, for the plaintiff-appellant.

Daniel P. Weingarten, Deputy Attorney, Dept. of Transportation, Legal Div., San Francisco, CA, for the defendant-appellee.

Before B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Judge.**

** The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

BETTY B. FLETCHER, Circuit Judge.

Nano Maldonado appeals the district court's dismissal of his action under 42 U.S.C. § 1983, which raises several First Amendment challenges to California's Outdoor Advertising Act. The district court held that, insofar as Maldonado's constitutional claims were ripe for review, it lacked jurisdiction to review them under the *Rooker–Feldman* doctrine. The district court also held that some of Maldonado's challenges were precluded under California law because of Maldonado's failure to raise the claims in an earlier state proceeding. Based on these findings, the district court granted the defendant's motion to dismiss. Maldonado brought this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

*I. Background and Procedural History*

This case is the latest chapter in a long-running dispute between Maldonado and the California Department of Transportation ("Caltrans").[1] Since 1991, Maldonado has owned a commercial building adjacent to U.S. Highway 101 in Redwood City, California, as well as a double-sided billboard that is mounted on the roof of the building. Caltrans is responsible for enforcing California's Outdoor Advertising Act ("COAA" or "the Act"), Cal. Bus. & Prof.Code §§ 5200–5486 (West 2003), which generally regulates advertising displays that are visible from and are placed near interstate and primary highways in California. *See* Cal. Bus. & Prof.Code § 5271.

In 1993, Maldonado applied to Caltrans for a permit to use his Redwood City billboard for off-premises advertising.

The application was denied because Maldonado's billboard stands along a segment of Highway 101 classified as a "landscaped freeway." COAA prohibits billboard advertisements along landscaped freeways unless the advertisement is for products or services offered on the premises. *See* Cal. Bus. & Prof.Code §§ 5440, 5442.[2] Since the denial of the permit, Maldonado has been attempting to get around the restrictions in COAA. In 1996, Maldonado was cited by Caltrans for posting off-premises advertisements on the billboard. Maldonado challenged the citation administratively, contending that the advertisements at issue comported with COAA because the businesses involved had also leased space in the building. The administrative board rejected Maldonado's contentions.

Because Maldonado persisted in his off-premises advertising, Caltrans brought a state nuisance suit against him in July 1998. In his answer, Maldonado raised a number of defenses under state law, but both sides agree that he did not raise any arguments regarding the constitutionality of the Act. After a bench trial, the state trial court entered judgment against Maldonado including a permanent injunction generally restricting his ability to post further advertisements on his billboard. Maldonado's appeals to California's appellate courts were rejected. *See People ex rel. Dep't of Transp. v. Maldonado*, 86 Cal. App.4th 1225, 104 Cal.Rptr.2d 66 (2001). At no time did Maldonado raise federal constitutional claims during the litigation.

Despite the state court rulings, Maldonado continued to test the advertising restrictions in the Act. He has twice been

---

1. We will refer to the defendant in this case as "Caltrans," even though the actual party defending the case is Tony Harris, the acting director of Caltrans.

2. The statute also allows advertisements offering the property on which they are situated for sale or lease, or which simply identify the owner or occupant of the building. *See* § 5442.

found in contempt of the state court injunction. Shortly before filing the complaint in this case, he posted a sign—which he describes as "political/religious"—which includes the messages "IN GOD WE TRUST"; "WE PRAY FOR WORLD PEACE"; and "HELP STOP TERRORISM." The sign also lists the phone numbers for the San Mateo County Sheriff's Department, the F.B.I. and the Red Cross, and also adds the message "Available for on site use" and a phone number. On the other side of the billboard, Maldonado posted a sign from the non-profit group Habitat for Humanity.

On July 2, 2000, Maldonado filed the instant action in the District Court for the Northern District of California. Maldonado's complaint alleged that the Act violated the First Amendment on its face and as it had been applied to him and his various advertisements. Maldonado sought a permanent injunction restraining enforcement of the Act, including any attempts by Caltrans to "enforce any injunction based upon" the Act.

Caltrans moved to dismiss the case on various grounds and the district court granted the motion. The district court concluded that Maldonado lacked standing to challenge the provisions of the Act dealing with permits and scenic highways, a conclusion that Maldonado does not challenge in this appeal. The district court also found that Maldonado's constitutional challenge on the prohibition of "off-premises" commercial advertising was barred by claim preclusion. Finally, the district court found that, to the extent they were ripe for review, all of Maldonado's claims were barred by the *Rooker–Feldman* doctrine.

Maldonado filed a timely notice of appeal.

## II. Standard of Review

We review a district court's dismissal of an action de novo, whether the dismissal is based on claim preclusion, ripeness or the *Rooker–Feldman* doctrine. *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002); *Ross v. Alaska,* 189 F.3d 1107, 1114 (9th Cir.1999); *Olson Farms, Inc. v. Barbosa,* 134 F.3d 933, 936 (9th Cir.1998). We may affirm a dismissal on any basis supported by the record, even if the district court relied on different grounds or reasoning. *Groten v. California,* 251 F.3d 844, 851 (9th Cir.2001).

## III. Discussion

### A. *Rooker–Feldman* Doctrine

◼ The district court found that all of Maldonado's challenges to COAA were barred by the *Rooker–Feldman* doctrine.[3] The basic premise of *Rooker–Feldman* is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall,* 341 F.3d 1148, 1154 (9th Cir.2003). *Rooker–Feldman* recognizes the implicit statutory structure established by Congress, which has determined that the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. *See* 28 U.S.C. § 1257; *Noel,* 341 F.3d at 1154–55.

We recently recognized that, while the basic premise of the *Rooker–Feldman* doctrine is relatively simple, it has not been applied consistently in the lower federal courts. *Noel,* 341 F.3d at 1162–63. In *Noel,* we set forth a general formulation of

---

**3.** The doctrine takes its name from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

*Rooker–Feldman* to attempt to clarify the scope of the doctrine. We explained that

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction.

*Id.* at 1164. We further noted that even if a federal suit was not barred by *Rooker–Feldman*, it might nonetheless be claim-precluded under res judicata principles. *Id.* We cautioned, however, that the issue of claim preclusion is distinct from the *Rooker–Feldman* question. *Id.*

■ When we apply the *Noel* formulation of the *Rooker–Feldman* doctrine to the facts of this case, it becomes clear that the doctrine does not deprive the district court of jurisdiction over any of Maldonado's claims. The legal wrong that Maldonado asserts in this action is not an erroneous decision by the state court in the nuisance suit brought against Maldonado by Caltrans, but the continued enforcement by Caltrans of a statute Maldonado asserts is unconstitutional. In other words, Maldonado asserts as a legal wrong "an allegedly illegal act ... by an adverse party." *Noel*, 341 F.3d at 1164. Under these circumstances, *Noel* makes clear that *Rooker–Feldman* does not apply.

The district court relied on a passage in *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 992(9th Cir.2002), where we stated that the *Rooker–Feldman* doctrine "precludes a federal district court from exercising jurisdiction over general constitutional challenges that are 'inextricably intertwined' with claims asserted in state court." We recognize that this state-ment in *Fontana* can be misleading when it is read out of context. However, as we explained in *Noel,*

> [t]he premise for the operation of the "inextricably intertwined" test ... is that the federal plaintiff is seeking to bring a forbidden de facto appeal. The federal suit is not a forbidden appeal because it is "inextricably intertwined" with something. Rather, it is simply a forbidden de facto appeal. Only when there is already a de facto appeal in federal court does the "inextricably intertwined" test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, the federal plaintiff may not seek to litigate an issue that is "inextricably intertwined" with the state judicial decision from which the forbidden de facto appeal is brought.

*Noel*, 341 F.3d at 1158. In this case, Maldonado is not bringing a forbidden de facto appeal because he is not alleging as a legal wrong an erroneous decision from the state court. *See id.* at 1164. Therefore, the "inextricably intertwined" test does not come into play.

Our conclusion remains the same even though Maldonado's complaint seeks relief from the injunction entered by the state court. In a recent decision we made clear that, even when a federal plaintiff is expressly seeking to set aside a state court judgment, *Rooker–Feldman* may not apply. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140(9th Cir.2004). In *Kougasian,* the federal plaintiff sought to set aside two state court judgments on the ground that its adversary had committed extrinsic fraud on the state court. We rejected the district court's conclusion that *Rooker–Feldman* barred the action, noting that, for *Rooker–Feldman* to apply, "a plaintiff must seek not only to set aside a state court judgment; he or she must also

allege a legal error by the state court as the basis for that relief." *Kougasian*, 359 F.3d at 1140. As we have already explained, Maldonado does not allege any legal errors by the California state court as a basis for relief, and *Rooker–Feldman* therefore does not bar his federal action.

## B. Claim Preclusion

█ The district court found that some of Maldonado's constitutional challenges to COAA were barred by claim preclusion because he had failed to raise them in the earlier state nuisance action. 28 U.S.C. § 1738 generally requires federal courts to give state court judgments the same res judicata effect that they would be given by another court of that state. *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Albano v. Norwest Fin. Haw., Inc.*, 244 F.3d 1061, 1063 (9th Cir.2001). We must therefore look to California law to determine the preclusive effect of the state court judgment entered against Maldonado. *Albano*, 244 F.3d at 1063. Caltrans argues that Maldonado's claims are barred under two different aspects of California law: California's compulsory cross-complaint statute and common law claim preclusion principles.

### 1. Claim Preclusion Under California's Compulsory Cross–Complaint Statute

█ California's compulsory cross-complaint statute provides that, except for some situations not relevant here,

> if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

Cal.Civ.Proc.Code § 426.30 (West 1973 & Supp.2004). The statute elsewhere defines "related cause of action" as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." Cal.Civ.Proc.Code § 426.10(c).

█ At first glance, the compulsory cross-complaint provision appears to bar at least some of Maldonado's claims. Maldonado's current constitutional challenges to COAA were certainly "related causes of action," within the meaning of the statute, to the state nuisance action that Caltrans brought against Maldonado in 1998. On closer inspection, however, it becomes clear that the cross-complaint provision is inapplicable in this case. Section 426.30 requires a defendant in a state court action in California to raise any related causes of action which he has against the *plaintiff* in that action. The plaintiff in the 1998 nuisance action against Maldonado was Caltrans. *See People ex rel. Dep't of Transp. v. Maldonado*, 86 Cal.App.4th 1225, 104 Cal.Rptr.2d 66 (2001). Maldonado, however, could not have filed a cross-complaint against Caltrans under 42 U.S.C. § 1983 raising the constitutional challenges he raises here. State agencies (such as Caltrans) are not "persons" within the meaning of § 1983, and are therefore not amenable to suit under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In other words, Maldonado had no "cause of action" against Caltrans under § 1983. We recognize that Maldonado could have brought a cross-complaint under § 1983 against the director of Caltrans as part of the 1998 nuisance action. *See* Cal.Civ. Proc.Code § 428.10(b) (allowing permissive cross-complaints against parties other than the original plaintiff). The fact that Maldonado *could* have brought a cross-com-

plaint, however, does not mean that he was *required* to do so. *See Banerian v. O'Malley*, 42 Cal.App.3d 604, 116 Cal.Rptr. 919, 924 (1974) (stating that,"[e]xcept as between plaintiffs and defendants, there is no compulsory cross-complaint in California procedure," and that a cross-complaint is permissive between parties and nonparties). Under the plain language of § 426.30, Maldonado was not required to bring a § 1983 action against the director of Caltrans because the director was not the plaintiff in the state nuisance action.[4]

### 2. Common Law Claim Preclusion

■ The district court found that Maldonado's claims were also barred under common law principles of claim preclusion. In California, a final judgment precludes further proceedings if they are based on the same cause of action. *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438 (9th Cir.1985). California courts employ the "primary rights" theory to determine what constitutes the same cause of action for claim preclusion purposes:

> [A] cause of action is comprised of a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a primary right gives rise to but a single cause of action.... As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.

*Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 123 Cal.Rptr.2d 432, 51 P.3d 297, 306–07 (2002) (quoting *Crowley v. Ka-*

*tleman*, 8 Cal.4th 666, 34 Cal.Rptr.2d 386, 881 P.2d 1083, 1090 (1994) (citations and internal quotations omitted)). If the "primary right" sought to be vindicated in a subsequent litigation is the same as that in an earlier suit, the second action will be claim precluded under California law. *See Mycogen Corp.*, 123 Cal.Rptr.2d 432, 51 P.3d at 306.

■ The district court found Maldonado's constitutional claims barred because it concluded that the same primary right was involved in both the 1998 state nuisance suit and the instant action, namely, Maldonado's right to engage in off-premises advertisement on his billboard. This conclusion stems from a misreading of California law, however. The primary right in the state nuisance action was not Maldonado's right to advertise on his billboard, but the right of the people of California to be free from obtrusive advertising displays along major highways. This was a statutory right that had been created by the state's Legislature. *Cf.* Cal. Bus. & Prof.Code § 5226(stating that regulation of highway advertisements was necessary "to promote the public safety, health, welfare, convenience and enjoyment of public travel ...."). On the other hand, the primary right involved in the instant action is the one identified by the district court: Maldonado's right to advertise freely on his property, a right that Maldonado claims is protected by the First Amendment. Because the primary rights involved in the two suits are different, the causes of action are also different, and the judgment against Maldonado in the nuisance action therefore does not bar any of his federal claims.

---

4. We note that our reading of § 426.30 is consistent with the California courts' recognition that preclusion provisions like the compulsory cross-complaint statute should be read narrowly. *See Datta v. Staab*, 173 Cal. App.2d 613, 343 P.2d 977, 980 (1959) (stating that the predecessor to § 426.30 "should be narrowly construed"); *see also Carroll v. Import Motors, Inc.*, 33 Cal.App.4th 1429, 39 Cal.Rptr.2d 791, 796 (1995) (noting, in the context of § 426.30, that "equity abhors a forfeiture").

The decision of the California Court of Appeal in *Morris v. Blank*, 94 Cal.App.4th 823, 114 Cal.Rptr.2d 672 (2001), supports our conclusion. In *Morris*, the original plaintiff, Morris, filed a negligence action against Blank in state superior court following a car accident. While this suit was pending, Blank filed a negligence action in municipal court against Morris, which Blank was able to settle with Morris' insurer. Blank then went back to superior court and claimed that the settlement of the municipal court action barred the action Morris had initially filed. The trial court agreed and dismissed Morris' suit. The California Court of Appeal reversed, finding that claim preclusion did not bar Morris' superior court action because the causes of action were not identical: "Here, Morris' superior court litigation is on a different cause of action ... involving separate and distinct torts, namely, Blank's negligence, from those at issue in Blank's municipal court case, namely, Morris' negligence." *Morris*, 114 Cal.Rptr.2d at 678 (internal quotations omitted). *Morris* illustrates that, even though two suits involve the same nucleus of facts, they do not necessarily raise the same cause of action under California law. *See also Branson v. Sun–Diamond Growers*, 24 Cal.App.4th 327, 29 Cal.Rptr.2d 314, 321 n. 6 (1994) (refusing to apply a "nucleus of facts" test for claim preclusion purposes).

The district court therefore erred in dismissing Maldonado's claims on the ground that they are barred by claim preclusion under California law.

## C. Ripeness

■ The district court concluded that, to the extent that the *Rooker–Feldman* doctrine did not apply, Maldonado's challenge to the application of COAA to his current advertisements was not ripe because it was unclear whether the statute would be enforced against those advertisements.

■ In *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir.2000) (en banc), we set out a framework to analyze whether a constitutional challenge to a state statute before its enforcement was ripe for review. We explained that the ripeness inquiry focuses on two different components: a constitutional component and a prudential component. *Id.* at 1138. The constitutional component of the inquiry focuses on three factors: (1) whether the plaintiffs have articulated a "concrete plan" to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 1139. Maldonado's suit fares well as far as the first and third factors are concerned: Maldonado alleges that his current conduct is in violation of COAA,[5] and Caltrans has un-

---

5. Counsel for Caltrans asserted at oral argument that COAA does not apply to non-commercial advertisements, although he could point to nothing in the statute in support of that assertion. California's Attorney General has stated that the Act "does not apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official." 79 Ops. Cal. Atty. Gen. 117 (1996). While the Attorney General's opinion also expresses doubt that the Act applies to noncommercial messages generally, *see id.* at 3–4, the actual question it dealt with was much narrower. Moreover, while the Attorney General's opinions are given substantial weight by the California courts, they are not considered controlling. *See Thorning v. Hollister Sch. Dist.*, 11 Cal.App.4th 1598, 15 Cal. Rptr.2d 91, 94 (1992). In any event, nothing in the statute creates an exception for non-commercial advertisements and no controlling caselaw has construed the Act in the manner Caltrans suggests. *Cf.* Cal. Bus. &

doubtedly enforced the statute against Maldonado in the past. Although the second factor is a closer question, it also tends to favor Maldonado: while there may not have been specific threats of enforcement against his current signs, the fact that an injunction had been entered against Maldonado certainly qualifies as a threat of enforcement. We therefore conclude that Maldonado's First Amendment challenge meets the constitutional component of ripeness.

In *Thomas,* we also pointed to a prudential component of ripeness, and we noted that the analysis of this component was guided by two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas,* 220 F.3d at 1141 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Maldonado's suit meets the first prong because there has been no contention that the record needs to be developed further in order for the district court to be able to address the constitutional challenge. *See City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1172 (9th Cir.2001) ("If a controversy is essentially legal in nature, it is fit for judicial decision.") (*quoting W. Oil & Gas Ass'n v. Sonoma County,* 905 F.2d 1287, 1291 (9th Cir.1990)) (internal quotation and citation omitted). The second factor also weighs in favor of Maldonado because withholding consideration of his claims will require him to risk being found in contempt of the state court injunction in order to be able to challenge the constitutionality of the statute. *Cf. City of Auburn,* 260 F.3d at 1171("If promulgation of the challenged regulations presents plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation, the controversy is ripe.") (quoting *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). Maldonado's suit therefore also meets the prudential component of ripeness.

In sum, we hold that Maldonado's constitutional claims are ripe for review.

**D. Statute of Limitations**

Finally, Caltrans argues that Maldonado's First Amendment challenges are barred by the statute of limitations applicable to § 1983 actions. The district court did not reach this issue because it had disposed of all of Maldonado's claims on other grounds. Nonetheless, we examine this issue to determine whether we can affirm the district court's dismissal of Maldonado's claims on this ground. *See Groten v. California,* 251 F.3d 844, 851 (9th Cir.2001).

 In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, we look to the statute of limitations for personal injury actions in the forum state. *See Azer v. Connell,* 306 F.3d 930, 935 (9th Cir.2002). We have therefore held that California's one-year statute of limitations for personal injury actions applies to § 1983 suits in federal court. *See DeGrassi v. City of Glendora,* 207 F.3d 636, 644 (9th Cir.2000). California's legislature, however, has recently revised the relevant statute of limitations, extending it to two years. *See* 2002 Cal. Legis. Serv. Ch. 448 (S.B.688) (West); Cal.Civ.Proc.Code § 335.1 (West Supp.2004). Maldonado argues that we

Prof.Code §§ 5202, 5203 and 5221 (defining "advertising displays" broadly with only narrow exceptions not including non-commercial advertisements), and Cal. Bus. & Prof.Code § 5440(providing that "no advertising display" shall be placed adjacent to a landscaped freeway except as provided in the Act).

should apply the two-year period. The extension of the statute of limitations, however, did not become effective until January 1, 2003, several months after Maldonado filed his complaint. Under California law, an extension of a statute of limitations will not apply to claims already barred under the prior statute of limitations unless the Legislature explicitly provides otherwise. *See Douglas Aircraft Co. v. Cranston*, 58 Cal.2d 462, 24 Cal.Rptr. 851, 374 P.2d 819, 822 (1962); *see also W. Sec. Bank, N.A. v. Superior Court*, 15 Cal.4th 232, 62 Cal.Rptr.2d 243, 933 P.2d 507, 513 (1997) ("A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so."). In enacting the new two-year statute of limitations, the California Legislature made it applicable retroactively only to the victims of the terrorist attacks of September 11, 2001. *See* 2002 Cal. Legis. Serv. Ch. 448, § 4 (S.B.688) (West). The recent extension is therefore inapplicable to Maldonado's claims, and we consider the question under the one-year period. *Accord Krupnick v. Duke Energy Morro Bay, LLC*, 115 Cal.App.4th 1026, 9 Cal.Rptr.3d 767 (2004) (holding that 2-year statute of limitations did not apply retroactively to claims already barred).

Because Maldonado filed the complaint in this case on July 2, 2002, any claims that had accrued before July 2, 2001 are barred by the statute of limitations. Federal law determines when a civil rights claim accrues. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.2001). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir.1999)). Under this standard, we find it clear that, to the extent that Maldonado challenges the application of COAA to the indisputably commercial signs he posted in the mid–1990s, the statute of limitations bars his claims. Maldonado certainly knew that Caltrans was enforcing COAA against his off-premises commercial advertisements by the time Caltrans filed a nuisance suit against him in July 1998. It seems equally clear, however, that Maldonado's challenge to the application of COAA as to his current signs—which he argues are non-commercial—is not barred by the statute of limitations, since he alleges that he did not post those advertisements until a few days before the complaint was filed.

A more difficult question is whether Maldonado's facial challenge of the statute is barred by the statute of limitations. In fact, whether a statute of limitations for § 1983 actions can bar a facial challenge under the First Amendment to a state statute appears to be a question that has not been conclusively resolved by any Circuit court. We join the Fourth Circuit in expressing serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations, *see Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir.1991),[6] but we

6. We note that a significant number of district courts have held that facial challenges under the First Amendment are not subject to the statutes of limitation applicable to § 1983 actions. *See Napa Valley Publishing Co. v. City of Calistoga*, 225 F.Supp.2d 1176, 1184 (N.D.Cal.2002); *Frye v. City of Kannapolis*, 109 F.Supp.2d 436, 439–40 (M.D.N.C.1999); *Lavey v. City of Two Rivers*, 994 F.Supp. 1019, 1023 (E.D.Wis.1998), *aff'd*, 171 F.3d 1110 (7th Cir.1999); *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1268, 1278 (C.D.Cal.1996); *Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F.Supp. 1341, 1364–65 (C.D.Cal.1995).

We also note that facial challenges under the First Amendment are fundamentally different from those brought under the Takings Clause. In the latter context, we have held

need not resolve the broader question here because we conclude that, under the circumstances present in this case, the statute of limitations does not bar Maldonado's facial challenge. In *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1063 (9th Cir.2002), we held that the district court had erred in dismissing a First Amendment facial challenge because the statute had actually been enforced against the plaintiffs during the statute of limitations period. In this case, Caltrans had enforced the statute in the most narrow sense in 1998 when it brought a state nuisance action against Maldonado. We conclude, however, that the fact that the state court entered a permanent injunction against Maldonado constituted a continuing enforcement of the statute against Maldonado, such that he is allowed to raise a facial challenge to the statute at any time so long as the injunction continues to be in force.

We therefore hold that the statute of limitations does not bar Maldonado's facial challenge to COAA, nor his as-applied challenge relating to the current, allegedly non-commercial advertisements.

## IV. Conclusion

We hold that the district court erred in dismissing Maldonado's challenges to California's Outdoor Advertising Act on the ground that they were barred on *Rooker–Feldman,* claim preclusion or ripeness grounds. We also hold that Maldonado's challenge to his earlier, indisputably-com-

that a statute of limitations can bar facial challenges. *See Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 687–88 (9th Cir.1993). However, as we explained in *Levald,*

> [i]n the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the proper-

mercial signs is barred by the statute of limitations, but that his facial challenge to the statute and his as-applied challenge relating to non-commercial advertisements are not barred. We therefore reverse the dismissal of Maldonado's § 1983 action and remand so that Maldonado's claims may be heard on the merits.

**REVERSED and REMANDED.**

ty or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed. Thus, it is not inconsistent to say that different rules adhere in the facial takings context and other contexts.

*Id.* at 688.