**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LARRY C. FLYNT; HAIG KELEGIAN, SR.; HAIG T. KELEGIAN, JR., *Plaintiffs-Appellants*, v. STEPHANIE K. SHIMAZU, in her official capacity as the Director of the California Department of Justice, Bureau of Gambling Control; JIM EVANS, in his official capacity as Chairman of the California Gambling Control Commission; TRANG TO, in his official capacity as Commissioner of the California Gambling Control Commission; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; PAULA D. LABRIE, in her official capacity as Commissioner of the California Gambling Control Commission, *Defendants-Appellees.*[*] | No. 17-17318 D.C. No. 2:16-cv-02831-JAM-EFB OPINION |

---

[*] Appellee Shimazu is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted February 13, 2019
San Francisco, California

Filed October 7, 2019

Before:  Mary M. Schroeder, Diarmuid F. O'Scannlain,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Rawlinson

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's dismissal, on statute of limitations grounds, of a lawsuit brought pursuant to 42 U.S.C. § 1983.

Plaintiffs hold gambling licenses to own and to operate cardrooms in California and wish to invest substantially in out-of-state casinos. They alleged that California Business & Professions Code §§ 19858 and 19858.5 prohibit them from doing so because, pursuant to the statutes, a licensee of a California cardroom may not own more than a one-percent

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

interest in any out-of-state entity that engages in casino-style gambling activities, even if such activities are lawful where the entity operates. Thus, in 2010, for example, the California Gambling Commission determined that plaintiff Kelegian Jr. violated the statutes through his ownership interest in an out-of-state casino and denied his application to renew his licenses for two California cardrooms. Kelegian Jr. thereafter divested his out-of-state ownership interest and on June 12, 2014, the Commission approved his renewal applications, but ordered him to pay a fine for his previous violations.

On November 30, 2016, plaintiffs brought suit for declaratory and injunctive relief alleging, in part, that §§ 19858 and 19858.5 were facially unconstitutional under the Dormant Commerce Clause. The district court dismissed the suit, ruling that the claims were time-barred because plaintiffs failed to bring suit within two years of the Commission's 2014 decision.

The panel first held that although this Circuit had yet to apply a state statute of limitations to a facial challenge under the Dormant Commerce Clause, it saw no reason to treat such a claim differently from facial constitutional claims under the First, Fifth, or Fourteenth Amendments. Thus, the panel concluded that plaintiffs' claims were subject to the forum state's statute of limitations. Here, the relevant period was two years.

The panel rejected the State's argument that plaintiffs' claims accrued in 2014 when the Commission issued its adverse decision on Kelegian Jr.'s investment. The panel held that when the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new

limitations period commences) with each new injury. The panel held that assuming for the sake of analysis that §§ 19858 and 19858.5 violated the Dormant Commerce Clause, plaintiffs demonstrated a continuing violation. The panel reasoned that sections 19585 and 19858.5 operate on an ongoing basis to prohibit plaintiffs from investing significantly in numerous casinos outside of California. And every two years, the Commission stands ready to enforce such prohibition as part of the state's license renewal process. The panel concluded that plaintiffs continue to be precluded from exploring *other* investment opportunities not as a consequence of the Commission's 2014 decision, but rather a result of the continued existence of the statutes themselves and the realistic threat of future enforcement.

Dissenting, Judge Rawlinson agreed with the district court that plaintiffs' claims were barred by the applicable two-year statute of limitations. Judge Rawlinson stated that the majority's view that the injury continues because the Gambling Commission stands ready to continue to enforce the statute is patently at odds with this Circuit's consistently articulated analysis of the continuing violation doctrine.

---

## COUNSEL

Paul J. Cambria Jr. (argued) and Erin McCampbell Paris, Lipsitz Green Scime Cambria LLP, Buffalo, New York, for Plaintiffs-Appellants.

James G. Waian (argued) and Peter H. Kaufman, Deputy Attorneys General; Sara J. Drake, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Diego, California; for Defendants-Appellees.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether California's statute of limitations for personal injury suits bars a facial challenge to the constitutionality of certain California gambling laws.

I

Larry Flynt, Haig Kelegian Sr., and Haig Kelegian Jr. (collectively "Licensees") hold gambling licenses to own and to operate cardrooms—establishments that "allow patrons to engage in non-banked or non-percentage card games during which the players play against each other and pay the cardroom a fee to use its facilities."[1]  In addition to owning cardrooms in California, they wish to invest substantially in out-of-state casinos.  They complain, however, that California law prohibits them from doing so.

---

[1] We take as true the well-pleaded allegations of the First Amended Complaint.  *See AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999).

A

California has long permitted in-state gambling, subject to certain restrictions. Relevant here, the state requires cardrooms to obtain a license to operate, *see* Cal. Bus. & Prof. Code § 19850, and to renew such license every two years, Cal. Bus. & Prof. Code § 19876(a). To maintain operations, cardroom owners must comply with state gambling laws. *See* Cal. Bus. & Prof. Code § 19922.

This case concerns the intersection of three such laws. First, California Penal Code § 330 prohibits cardrooms from engaging in casino-like activities, including blackjack, roulette, and other house-banked or percentage games. Second, California Business and Professions Code § 19858(a) prohibits a person from "hold[ing] a state gambling license to own a gambling establishment if," among other things, he "has any financial interest in any business or organization that is engaged in any form of gambling prohibited by Section 330 of the Penal Code, *whether within or without [the] state*." (emphasis added). Finally, California Business & Professions Code § 19858.5 permits a limited exception to § 19858's broad prohibition. Under § 19858.5, an applicant or licensee who "has a financial interest in another business that conducts lawful gambling *outside* the state that, if conducted within California, would be unlawful," may still "hold a state gambling license" so long as he does "not own, either directly or indirectly, *more than a 1 percent interest in*, or have control of, that business." (emphasis added).

The upshot of §§ 19858 and 19858.5 is that a licensee of a California cardroom may not own more than a one-percent interest in any out-of-state entity that engages in casino-style

gambling activities, even if such activities are lawful where the entity operates.

## B

With these laws on the books, Flynt and the Kelegians allege that they have been unable to pursue numerous investment opportunities in out-of-state casinos, despite having a "keen interest" in doing so and being "ready, willing, and able to compete for the opportunity." Flynt, for instance, alleges that prior to 2014 and as late as November 2015, he declined offers to purchase casinos in Nevada, Iowa, Colorado, Louisiana, and Mississippi because of California's ownership restrictions. The Kelegians claim that they too declined to pursue similar opportunities to invest outside the state.

In 2010, for example, Kelegian Jr. acquired real property in the State of Washington for the purpose of opening a casino there. Together with his wife, Kelegian Jr. formed Kelco Gaming, LLC, which operated the casino. He owned a one-percent interest in the LLC, and his wife owned the remaining ninety-nine percent. At the same time, Kelegian Jr. applied to the California Gambling Commission to renew his licenses for two California cardrooms. The Commission, tasked with reviewing and issuing state gambling licenses, denied his applications on the grounds that his ownership interest in the Washington casino violated §§ 19858 and 19858.5. Kelegian Jr. divested his interest in the casino and requested a hearing on the denial of his applications. In a public decision issued on June 12, 2014, the Commission approved Kelegian Jr.'s applications but ordered him to pay a fine for his previous violation to the Bureau of Gambling

Control, a division of the California Department of Justice that is charged with enforcing California's gambling laws.

## C

On November 30, 2016, Flynt and the Kelegians sued the Bureau of Gambling Control, members of the California Gambling Commission in their official capacities, and the Attorney General of California (collectively, "the State") under 42 U.S.C. § 1983 in the Eastern District of California. They alleged that §§ 19858 and 19858.5 were facially unconstitutional under the Dormant Commerce Clause because the statutes prohibit interstate investment and discriminate against out-of-state economic interests.[2] Licensees sought declaratory and injunctive relief. The State moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that the suit was barred by the applicable statute of limitations.

The district court dismissed the suit, ruling that Licensees' claims were time-barred because they failed to bring suit within two years of the Commission's 2014 decision.

This timely appeal followed.

---

[2] Licensees also alleged that the statutes were facially unconstitutional under the Fourteenth Amendment and unconstitutional as applied to them. Licensees have abandoned these claims by failing to address them on appeal. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

II

Licensees contend that the district court erred in dismissing their claims as time-barred. "Section 1983 does not contain its own statute of limitations." *Butler v. Nat'l Comm. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). Instead, claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits. *See Wilson v. Garcia*, 471 U.S. 261, 275–77 (1985), *superseded by statute on other grounds*; *Butler*, 766 F.3d at 1198. Citing *Brown v. Board of Education*, 347 U.S. 483 (1954), and *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), Licensees note that courts have entertained facial challenges to the constitutionality of statutes long after their enactment. Licensees thus contend that a statute of limitations ought never to apply to facial challenges because "such challenges are litigated without regard to the particularities of the plaintiff or the case." But whether a statute of limitations *applies* to such claims and whether it ultimately *bars* them are different matters. Sometimes, as we explain below, a statute of limitations, though applicable, does not bar a facial challenge. *See, e.g.*, *Maldonado v. Harris*, 370 F.3d 945, 956 (9th Cir. 2004).

The Supreme Court has never limited the *application* of a statute-of-limitations period to as-applied challenges. Instead, it has construed 42 U.S.C. § 1988 broadly "as a directive to select, in each State, the one most appropriate statute of limitations for *all* § 1983 claims." *See Wilson*, 471 U.S. at 275–79 (emphasis added). Accordingly, our cases routinely subject both as-applied and facial challenges brought under § 1983 to the forum state's statute of limitations. *See, e.g.*, *Scheer v. Kelly*, 817 F.3d 1183 (9th Cir. 2016) (facial challenge under the First and Fourteenth

Amendments); *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) (as-applied challenge to racially discriminatory practices); *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007) (facial challenge under the Fifth and Fourteenth Amendments); *Maldonado*, 370 F.3d at 945 (facial challenge under the First Amendment); *Barancik v. County of Marin*, 872 F.2d 834 (9th Cir. 1988) (facial due process challenge).

Although our court has yet to apply a state statute of limitations to a facial challenge under the Dormant Commerce Clause, we see no reason to treat such a claim differently from facial constitutional claims under the First, Fifth, or Fourteenth Amendments. Thus, consistent with our court's case law, we conclude (as the district court did) that Licensees' claims are subject to the forum state's statute of limitations. Here, the relevant period is two years. *See* Cal. Code Civ. P. § 335.1; *Action Apartment Ass'n*, 509 F.3d at 1027.

A

Deciding that California's statute of limitations applies—in the abstract—to Licensees' claims does not end the inquiry, however, for we still must decide whether the limitations period ultimately bars such claims. In other words, we must consider when the limitations period began to run and whether, as the district court concluded, time had run out. To answer these questions, we look to federal law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

1

A limitations period begins to run when the claim accrues. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993). "It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action," *Wallace*, 549 U.S. at 388 (internal quotation marks and alteration omitted), that is, when the plaintiff "knows or has reason to know of the actual injury," *Scheer*, 817 F.3d at 1188 (quoting *Lukovsky*, 535 F.3d at 1051).

Licensees urge us to reject this rule on accrual for facial constitutional challenges. But just as there is no justification to treat facial challenges differently for purposes of determining whether a statute of limitations *applies*, there is no reason to do so for purposes of determining when a claim *accrues*. *See Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019). *Scheer* states the proper test for accrual. The question, then, is whether Licensees' claims accrued outside the limitations period.

2

The State argues (and the district court found) that Licensees' claims accrued when the Commission issued its adverse decision on Kelegian Jr.'s investment in June 2014. The State reasons that such decision put all three Licensees on notice of how the Commission would interpret and enforce § 19858.5's one-percent limitation and that Licensees therefore knew of the injuries underlying this suit as early as June 2014. Because Licensees filed suit more than two years later, the State contends that the district court properly dismissed the suit as untimely.

Licensees concede that they were aware of the Commission's decision and that they refrained from pursuing some investment opportunities as a result. Nevertheless, they urge that their claims are timely because the statutes' ongoing prohibition, coupled with the Commission's willingness to enforce it, effects a "continuing violation" and a "continuing harm"—namely, because of the statutes, Licensees continue to be prohibited from investing substantially in out-of-state casinos, as they wish to do.

When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury. *See Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 521–22 (6th Cir. 1997); *Palmer v. Bd. of Educ. of Comm. Unit Sch. Dist. 201-U*, 46 F.3d 682, 686 (7th Cir. 1995) ("A series of wrongful acts . . . creates a series of claims."); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Assuming for the sake of analysis that §§ 19858 and 19858.5 violate the Dormant Commerce Clause, Licensees have demonstrated a continuing violation.[3]   Sections 19585 and 19858.5 operate on an ongoing basis to prohibit them from investing significantly in

---

[3] As the Eleventh Circuit has explained, the term "continuing violation" is "something of a misnomer," in that it "implies that there is but one incessant violation and that the plaintiffs should be able to recover for the entire duration of the violation, without regard to the fact that it began outside the statute of limitations window." *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994). But that is not the scenario that it describes. Rather than "one on-going violation," a continuing violation is really "a series of repeated violations." *Id.* And "[b]ecause each violation gives rise to a new cause of action, each [violation] begins a new statute of limitations period as to that particular event." *Id.*

numerous casinos outside of California. And every two years, the Commission stands ready to enforce such prohibition as part of the state's license renewal process. *See* Cal. Bus. & Prof. Code § 19930(a)(1) & (b). Licensees therefore suffer a new injury each time they abstain from investing for fear that the Commission will enforce the statutes' prohibition.[4] *See Kuhnle*, 103 F.3d at 522 ("Kuhnle suffered a new deprivation of constitutional rights every day that Resolution 91-87 remained in effect."). With each new injury, a new claim arises, and the statute of limitations period begins anew. *Id.* at 522–23 (holding that because "a new injury was allegedly inflicted on Kuhnle each day that Resolution 91-87 was in effect, a new limitations period began to run each day as to that day's damage" (internal quotation marks removed)); *see also Palmer*, 46 F.3d at 685–86 (holding that a racial discrimination claim "arises each day a child is assigned to school under a racially discriminatory policy").

We need turn only to the First Amended Complaint to observe that such injuries occurred during the limitations period. *See Lewis v. City of Chicago*, 560 U.S. 205, 214 (2010) (Whether a violation occurred during the limitations period "depends on the claim asserted."). Licensees allege a present inability to invest. Although they highlight specific forgone investment opportunities from 2014 and 2015, they do not seek damages for such lost opportunities. Instead, they

---

[4] The dissent contends that the Commission's readiness to enforce the statutes has no bearing on the continuing violation analysis. But such readiness demonstrates the legitimacy of Licensees' claims: so long as the Commission is willing to enforce the statutes, Licensees will continue to suffer a constitutional deprivation so long as they abide by the statutes' ongoing prohibition.

seek prospective relief, enjoining the State from enforcing the statutes in the future. Assuming a limitations period extending two years back from the date on which Licensees' filed their First Amended Complaint (June 15, 2017), Licensees' alleged injuries fall well within the period. The district court erred by concluding otherwise.

The State responds that Licensees failed to plead a continuing violation because their inability to invest outside California is merely a continuing *effect* of the Commission's 2014 decision, rather than a new injury. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (A "mere continuing *impact* from past violations is not actionable" if the violations lie outside the statute of limitations period. (internal quotation marks omitted)); *see also Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (A "continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."). The Commission's decision, however, is not what prohibits Licensees from pursuing their desired investments. The statutes themselves do that. Ultimately, the Commission's decision did nothing but enforce the statutes against a particular plaintiff—Kelegian Jr.—with respect to a particular investment. That all three Licensees continue to be precluded from exploring *other* investment opportunities is not a consequence of the Commission's decision, as the dissent would have us conclude, but rather a result of the continued existence of the statutes themselves and the realistic threat of future enforcement.[5]  The State's reliance

---

[5] For the same reason, this case is distinguishable from our recent opinion in *Bird v. Dep't of Human Servs.*, 935 F.3d 738 (9th Cir. 2019). *Bird* held that the plaintiff's § 1983 claim for deprivation of procedural due process was time-barred because the deprivation occurred before the limitations period and only effects of such deprivation occurred during the

on *Knox* and other similar cases is therefore misplaced.[6] Licensees' claims are timely.

B

Two final arguments raised by the State merit brief attention.

First, the State contends—without support—that Licensees are estopped from asserting their facial challenges to §§ 19858 and 19858.5 because they "urged the California Legislature to adopt California Business and Professions Code section 19858.5." We are unaware of any theory of *judicial* estoppel that would preclude relief on the basis of a litigant's *legislative* lobbying. Regardless, Licensees' prior lobbying has no bearing on their ability to challenge the constitutionality of the statutes; that Licensees supported the adoption of § 19858.5's one-percent limitation at a time when § 19858 completely banned investment in out-of-state casinos is not inconsistent with their position later that even the one-percent exception violates the Constitution.

---

limitations period. By contrast, the § 1983 claim in this case is timely because the Licensees plead a harm that constantly renews, including during the limitations period.

[6] The State's (and the dissent's) reliance on *Scheer* is similarly unpersuasive. Unlike the gambling statutes here, the challenged practice in *Scheer* was not a continuing violation, but instead involved a one-time application of California's attorney discipline procedures, triggering the statute of limitations only upon final decision of the California Supreme Court, *see* 817 F.3d at 1188. *Scheer* therefore does not demand a contrary result.

Second, the State argues cursorily that Licensees failed to plead facts supporting a facial, as opposed to an as-applied, challenge. The State did not raise this argument in its motion to dismiss, so the district court did not rule on it. We decline to do so in the first instance.

### III

Assuming that the enforcement of §§ 19858 and 19858.5 inflicts an injury, California's two-year statute of limitations does not bar facial challenges under the Dormant Commerce Clause.

**REVERSED and REMANDED.**

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. I agree with the district court that the Plaintiffs' claims were barred by the applicable two-year statute of limitations.

The majority opinion relies on out-of-circuit authority addressing the continuing violation doctrine to reverse the ruling of the district court. *See Majority Opinion*, pp.12–13 (citing *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 521–22 (6th Cir. 1997); *Palmer v. Bd. of Educ. of Comm. Unit Sch. Dist. 201-U*, 46 F.3d 682, 686 (7th Cir. 1995)). However, our precedent supports the ruling by the district court.

As the majority acknowledges, a statute of limitation commences running when the claim accrues. *See Levald, Inc.*

*v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993). In turn, the claim accrues when "a plaintiff knows or has reason to know of the actual injury." *Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016) (quoting *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)) (internal quotation marks omitted).

It is undisputed that Plaintiffs Larry C. Flynt, Haig Kelegian, and Haig Kelegian, Jr. became aware on June 12, 2014, that the challenged statute prohibited any interest in a gambling establishment outside California if that interest exceeded one percent. Because Plaintiffs desired to acquire prohibited interests in gambling establishments outside California, the injury imposed by the statute accrued as to them at the latest on June 12, 2014, when the California Gambling Commission required Kelegian, Jr. to divest himself of a community property interest in a gambling establishment that exceeded one percent. At that point, Plaintiffs knew or had reason to know that the statute imposed an actual injury upon them. *See Scheer*, 817 F.3d at 1188 (observing that the statute of limitations on a claim against the State Bar would begin to run when discipline was imposed or was foreseeable).

Plaintiffs' complaint was filed more than two years after the Gambling Commission's action, and was thus untimely. The majority avoids this conclusion by employing the continuing violation doctrine as interpreted by other circuits. But the continuing violation doctrine, as interpreted in this circuit, supports the decision of the district court.

In *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002), we determined the limitations period by identifying "when the operative decision occurred." (internal

quotation marks omitted). Once the operative decision is identified, the inevitable consequences of the operative decision do not affect the running of the statute of limitations. *See id.*

Relying upon out-of-circuit authority, the majority posits that Plaintiffs established the existence of a continuing violation because "the Commission stands ready to enforce" the statutory prohibition "as part of the state's license renewal process." *Majority Opinion*, p. 13 (citing *Kuhnle*, 103 F.3d at 522 – Sixth Circuit; *Palmer*, 46 F.3d at 685–86 – Seventh Circuit). However, our precedent does not support this interpretation of the continuing violation doctrine. Rather, inaction on the part of a government entity has no effect on the statute of limitations calculus. *See Scheer*, 817 F.3d at 1188 (observing that the statute of limitations was not triggered until the State Bar had imposed discipline). The fact that the Gambling Commission "stands ready" to enforce the statute does not translate into the "discrete act" required to support a continuing violation argument. *RK Ventures*, 307 F.3d at 1061 (rejecting a continuing violation argument and explaining that "the statute of limitations runs separately from each discrete *act*") (citing *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2072 (2002)) (emphasis added). Simply put, under our precedent the continuing violation theory cannot rest on a non-act, such as "standing ready" to enforce a statute. *See id.*

The majority attempts to distinguish our recent decision in *Bird v. Dep't of Human Servs.*, No. 17-16076, ___ F.3d ___, 2019 WL 3977554 (9th Cir. August 23, 2019) (per curiam), reiterating our steady approach to the continuing violation doctrine. *See Majority Opinion*, p. 14 n.5.

However, there is no principled basis upon which *Bird* can be distinguished from the facts of this case.

In *Bird*, the plaintiff brought a claim under 42 U.S.C. § 1983 against the Hawaiʻi Department of Human Services for including and retaining her name on a child abuse registry. *See* 2019 WL 3977554 at *1, 4. Bird became aware that her name was on the registry in 2012 "when the report turned up on a background check." *Id.* at *2. After Bird rejected the offer of a limited administrative hearing, her attorney sent the Department a letter dated May 14, 2013, stating that Bird would proceed to litigation unless her name was removed from the registry. *See id.* at *4.

The district court concluded that Bird's cause of action accrued at the latest on May 14, 2013, and the complaint filed more than two years after that date was untimely. *See id.* at *5.

We affirmed the judgment of the district court that Bird's complaint was time-barred. *See id.* We rejected Bird's continuing violation argument and her argument that the statute can be challenged as long as it is in effect. *See id.* at *5–6. We confirmed that an alleged due process violation under § 1983 is "a discrete event" that is governed by the "discovery rule of accrual." *Id.* at *7. Applying the rule to Bird's claim, we concluded that because Bird was aware of her claim no later than May, 2013, her claim was discovered on that date and the statute of limitations began to accrue. *See id.* at *10. We noted that the "little [that] remains of the continuing violations doctrine" did not apply to Bird's individualized claim. *Id.* at *8–9. We echoed our past rulings in reasoning that "the deprivation of liberty that Bird continues to suffer is best understood as the continuing

impact from a past violation," rather than a separate discrete injury.  *Id.* at *9 (citations and alteration omitted).  We elaborated that although the injuries resulting from Bird's placement on the registry continued "to the present day," that "continuing effect is insufficient to constitute a continuing violation."  *Id.* (citation omitted).

Application of this same analysis to the plaintiffs in this case is inescapable.  The plaintiffs in this case indisputably became aware on June 12, 2014, that they were prohibited by the challenged statute from acquiring an interest in a gaming establishment outside California in excess of one percent.  Their complaint, asserting individualized claims as in *Bird*, was filed more than two years later, and was untimely.  The fact that the Gambling Commission continued to enforce the statute "is insufficient to constitute a continuing violation."  *Id.* (citation omitted).

In *Bird*, we specifically addressed and rejected the argument that the continued existence of a challenged statute supports the extension of a limitations period.  We explained that acceptance of that argument "would essentially nullify all statutes of limitations with respect to statutory challenges."  *Id.* at *6.

In the process of debunking Bird's argument, we expressly negated any reliance on the Sixth Circuit's decision in *Kuhnle*, a case also heavily relied upon by the majority.  In *Bird*, we explained that *Kuhnle* "did nothing more than bring the . . . Sixth Circuit[] into alignment with our view that a facial challenge to a statute generally accrues when the statute is enforced."  *Id.* (citation and internal quotation marks omitted).  The majority's view that the injury continues because the Gambling Commission "stands ready" to

continue to enforce the statute is patently at odds with our consistently articulated analysis of the continuing violation doctrine.  *See id.*

Because the continuing violation theory is not viable under our precedent, I agree with the district court that Plaintiffs' action is barred by the applicable statute of limitations.  I respectfully dissent from the majority's contrary conclusion.