**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM ELLIS; ROBERT DILL;
EDWARD RUPPRECHT; ROBERT
GUSTAVIS, individually and on
behalf of all others similarly situated,
*Plaintiffs-Appellants/*
*Cross-Appellees*,

v.

SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT AND POWER
DISTRICT,
*Defendant-Appellee/Cross-*
*Appellant.*

Nos. 20-15301
20-15476

D.C. No.
2:19-cv-01228-
SMB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted February 2, 2021
Phoenix, Arizona

Filed January 31, 2022

Before:  William A. Fletcher, Eric D. Miller, and
Danielle J. Forrest,[*] Circuit Judges.

Opinion by Judge Miller

---

**SUMMARY[**]**

---

**Antitrust**

The panel affirmed in part and reversed in part the district court's dismissal of an action alleging that a price plan adopted by Salt River Project Agricultural Improvement and Power District ("SRP"), a power and water utility, unlawfully discriminated against customers with solar-energy systems and was designed to stifle competition in the electricity market.

Affirming in part, the panel held applicable in federal court Arizona's notice-of-claim statute, which provides that persons who have claims against a public entity, such as SRP, must file with the entity a claim containing a specific amount for which the claim can be settled.  The panel held that the Arizona statute did not conflict with Federal Rule of Civil Procedure 23 by imposing an extra barrier to class certification, and it was not a state procedural rule inapplicable in federal court under the *Erie* doctrine.  The panel held that plaintiffs failed to comply with the notice-of-claim statute, and it therefore barred their state-law claims.

---

[*] Formerly known as Danielle J. Hunsaker.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Reversing and remanding in part, the panel held that the district court erred in dismissing plaintiffs' equal protection claim as barred by Arizona's two-year statute of limitations for personal-injury claims. The panel held that, under federal law, the claim did not accrue when SRP approved the price plan, but rather when plaintiffs received a bill under the new rate structure. The panel held that because three plaintiffs sued within two years of first being charged under the price plan, their claims were timely as to all charges incurred. A fourth plaintiff did not sue within two years of becoming subject to the price plan, but he was charged under it within the limitations period. His claims, therefore, were timely only as to charges incurred within two years of suing. The panel held that what plaintiffs alleged was not a continuing violation, but rather a series of repeated violations, each of which gave rise to a new cause of action and thereby began a new statute of limitations period as to that particular event.

Addressing plaintiffs' claims for monopolization and attempted monopolization under the Sherman Act, the panel affirmed the district court's rulings that the claims were not barred by the filed-rate doctrine and state-action immunity and that the Local Government Antitrust Act shielded SRP from federal antitrust damages. The panel reversed the district court's holding that plaintiffs failed sufficiently to allege antitrust injury.

The panel held that antitrust injury requires (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent. The panel held that the district court erred in concluding that plaintiffs failed to adequately allege antitrust injury based on the court's finding that the price plan actually encouraged

competition in alternative energy investment. The panel rejected SRP's arguments that plaintiffs' allegations were insufficient because they paid the higher rate before SRP could succeed in fully displacing competition or because they could not claim to have been injured by the exclusionary conduct because they had attempted to use the market alternatives that they claimed SRP tried to make uneconomical.

The panel held that the filed-rate doctrine, prohibiting individuals from asserting civil antitrust challenges to an entity's agency-approved rates, did not apply because SRP did not file its rates with anyone other than itself.

The panel held that SRP was not entitled to state-action immunity because the State of Arizona had not articulated a policy to displace competition, but rather had clearly expressed a policy preference for competition in electricity generation and supply.

The panel held that the Local Government Antitrust Act shielded SRP from antitrust damages because SRP is a special functioning governmental unit established by Arizona law, but the Act did not bar declaratory or injunctive relief.

**COUNSEL**

Hart L. Robinovitch (argued), Zimmerman Reed LLP, Scottsdale, Arizona; David M. Cialkowski and Alia M. Abdi, Zimmerman Reed LLP, Minneapolis, Minnesota; Daniel E. Gustafson, Daniel C. Hedlund and Daniel J. Nordin, Gustafson Gluek PLLC, Minneapolis, Minnesota; for Plaintiffs-Appellants/Cross-Appellees.

Daniel S. Volchok (argued), Christopher E. Babbitt, and David Gringer, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Elizabeth Bewley, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts; Eric Dell Gere, Jennings Strouss & Salmon PLC, Phoenix, Arizona; for Defendants-Appellees/Cross-Appellants.

Matthew C. Mandelberg (argued), Daniel E. Haar, and Steven J. Mintz, Attorneys; Andrew J. Robinson, Counsel to the Assistant Attorney General; Michael F. Murray, Deputy Assistant Attorney General; Makan Delrahim, Assistant Attorney General; United States Department of Justice, Antitrust Division, Washington, D.C.; for Amicus Curiae United States of America.

Howard M. Crystal and Anchun Jean Su, Center for Biological Diversity, Washington, D.C., for Amici Curiae Center for Biological Diversity, Food and Water Watch, Friends of the Earth Inc., Institute for Local Self-Reliance, and N.C. Warn Inc.

**OPINION**

MILLER, Circuit Judge:

Salt River Project Agricultural Improvement and Power District (SRP) is a power and water utility that services most of the Phoenix metropolitan area. In 2015, SRP increased prices for customers with solar-energy systems. Plaintiffs William Ellis, Robert Dill, Edward Rupprecht, and Robert Gustavis (collectively, "Ellis") sued SRP under federal and state law, alleging that the new price plan unlawfully discriminates against customers with solar-energy systems and was designed to stifle competition in the electricity market. The district court dismissed the complaint in its entirety. Ellis appeals the dismissal of his claims, and SRP cross-appeals the district court's rejection of certain of its affirmative defenses. We affirm the district court's dismissal of Ellis's state-law claims but reverse the dismissal of the federal claims and remand for further proceedings.

I

Because the district court resolved this case on a motion to dismiss, we assume the truth of the facts as set out in the complaint. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 688 n.2 (9th Cir. 2019).

SRP is a political subdivision of the State of Arizona. Ariz. Rev. Stat. Ann. § 48-2302. It controls the electrical grid and has authority to set prices for the sale and distribution of electricity to the approximately one million retail customers in its service territory. It supplies more than 95 percent of the electricity used by those customers.

Some of SRP's customers have chosen to install solar-energy systems, such as rooftop solar panels, thereby

reducing the amount of electricity they need to purchase from SRP. But solar energy is not always available, and customers with solar installations must still rely on SRP when their solar-energy systems do not produce electricity or produce less electricity than they need.

In the past, SRP encouraged the use of solar-energy systems. For example, its net metering program gave customers credit on their bill for generating excess electricity, which was transmitted through the grid and purchased at retail rates by other customers. SRP also attempted to enter the solar-energy market itself, but when that effort faltered, it eliminated incentives to install solar-energy systems. Even so, SRP's service territory has one of the highest rates of solar installation in the nation.

In 2014, SRP announced a new pricing scheme that included various "Standard Electric Price Plans." One of those plans, the E-27 price plan, established separate rates for customers who generate their own electricity through solar-energy systems. The E-27 plan applies only to customers who installed solar panels after December 8, 2014; those who had already installed solar panels were grandfathered into the previous pricing scheme. Under the E-27 plan, solar customers can be charged up to 65 percent more for SRP electricity than under prior plans for solar customers.

In February 2015, the SRP board of directors approved the new pricing scheme. At the same time, it adopted a rate increase for its non-solar customers of only about 3.9 percent. After adopting the new pricing scheme, SRP undertook a $1.7 million advertising campaign to promote its increased rates for solar customers. Not surprisingly, applications for solar-energy systems in SRP territory decreased by between 50 and 96 percent.

Ellis is an SRP customer who is subject to the new E-27 price plan. He sued SRP in federal court on behalf of a putative class of similarly situated customers. In his first amended complaint (the operative pleading here), he asserted claims under the Sherman Act, 15 U.S.C. § 2; various Arizona consumer protection, antitrust, and price discrimination laws; and the equal protection clauses of the United States and Arizona constitutions. Ellis alleged that the E-27 price plan "discriminates against customers that use solar energy systems and disincentivizes further purchases and use of solar energy systems" by eliminating "the economic value in investing in solar energy systems to self-generate electricity," leading customers "to obtain their electrical power needs exclusively from SRP." According to Ellis, "[t]he E-27 price plan makes it impossible for solar customers to obtain any viable return on a solar energy system investment, thereby eliminating any competition from solar energy."

The district court dismissed the complaint in its entirety. First, the district court held that the state-law claims were barred because Ellis did not comply with Arizona's notice-of-claim statute by filing an appropriate claim with SRP before bringing suit. *See* Ariz. Rev. Stat. Ann. § 12-821.01. Second, it dismissed the federal equal protection claim as untimely. Third, although it held inapplicable the filed-rate and state-action-immunity doctrines, it dismissed the federal antitrust claims for failure to allege antitrust injury. It also concluded that the Local Government Antitrust Act (LGAA), 15 U.S.C. §§ 34–36, shields SRP from federal antitrust damages.

Ellis appeals. Because the district court granted Ellis leave to amend his federal antitrust claims, SRP cross-appeals the district court's rejection of its alternative grounds

for dismissal, which, if accepted, would have resulted in a dismissal with prejudice. But Ellis did not file an amended complaint within the time allotted by the district court, and the district court subsequently entered an order terminating the case. Because that order did not specify otherwise, it "operates as an adjudication upon the merits," or in other words as a dismissal with prejudice. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting Fed. R. Civ. P. 41(b)). Thus, SRP has already obtained the judgment it now seeks through its cross-appeal. An appellee must cross-appeal to obtain "relief more extensive than [that] received from the district court," *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995), but it should not cross-appeal if all it wishes to do is present alternative grounds for affirming the judgment, *Spencer v. Peters*, 857 F.3d 789, 797 n.3 (9th Cir. 2017); *see, e.g.*, *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999). SRP's cross-appeal is therefore unnecessary; the arguments SRP advances in the cross-appeal should simply have been asserted as alternative grounds for affirmance in SRP's appellee's brief. But we may affirm on any ground supported by the record, so we will proceed to consider the issues raised in both appeals. *See Spencer*, 857 F.3d at 797 n.3.

II

We first consider whether Arizona's notice-of-claim statute applies in federal court and, if so, whether Ellis satisfied it. We hold that the statute applies and that Ellis did not comply with its terms, so it bars his state-law claims.

Under Arizona law, "[p]ersons who have claims against a public entity" such as SRP must file a claim with the entity "within [180] days after the cause of action accrues . . . contain[ing] a specific amount for which the claim can be settled." Ariz. Rev. Stat. Ann. § 12-821.01(A). A claim that

is not so filed "is barred and no action may be maintained thereon." *Id.*; *see Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492 (Ariz. 2007).

The statute poses a dilemma for those seeking to bring a class action: "Persons filing a claim with a public entity do not yet represent a class," so they "have authority to settle only their individual claims." *City of Phoenix v. Fields*, 201 P.3d 529, 533 (Ariz. 2009). That means that those seeking to assert a class claim are unable to "set forth a 'specific amount' for which the claim of the *entire* class 'can be settled.'" *Id.* (quoting Ariz. Rev. Stat. Ann. § 12-821.01(A)). To resolve that dilemma, the Arizona Supreme Court has interpreted section 12-821.01(A) to allow a would-be class representative to "include in his notice of claim a 'specific amount' for which his individual claim can be settled," together with "a statement that, if litigation ensues, the representative intends to seek certification of a plaintiff class." *Id.* at 534. "If a class is later certified, the notice of claim will serve as a representative notice for other class members." *Id.*

Ellis argues that section 12-821.01(A) allows public-entity defendants to "pick off" class representatives by forcing settlement of their individual claims before a class can be certified, thereby preventing them from representing a class. This, he says, conflicts with Federal Rule of Civil Procedure 23 by imposing an extra barrier to class certification. Alternatively, Ellis contends that section 12-821.01(A) is a state procedural rule that does not apply in federal court under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

A

To determine whether Rule 23 displaces Arizona's notice-of-claim statute, we "must first determine whether Rule 23 answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). We ask "whether, when fairly construed, the scope of Federal Rule [23] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 & n.9 (1980)). If so, then the federal rule controls "unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398.

In *Shady Grove*, the Supreme Court considered a New York statute providing that "an action to recover a penalty . . . imposed by statute may not be maintained as a class action." 559 U.S. at 396 n.1 (quoting N.Y. C.P.L.R. 901(b)). The Court emphasized that both Rule 23 and the state law addressed the same question: "whether a class action may proceed for a given suit." *Id.* at 401. Because Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," and the state law "attempt[ed] to answer the same question" by dictating that the same suit "may not be maintained as a class action," the provisions conflicted. *Id.* at 398–99 (emphasis omitted) (quoting N.Y. C.P.L.R. 901(b)).

But unlike the statute considered in *Shady Grove*, which specifically foreclosed class treatment of otherwise valid claims, section 12-821.01(A) does not so much as mention class actions. It merely requires that a potential class

representative, like any other plaintiff, file a notice of claim before filing suit; noncompliance bars individual and class claims alike. If section 12-821.01(A) prevents a claim from ripening into a viable class action, it is not because Arizona has "impose[d] additional requirements" beyond what Rule 23 demands. *Shady Grove*, 559 U.S. at 401. It is because the plaintiff has failed to satisfy a prerequisite to asserting *any* claim against a public entity under Arizona law.

Ellis attempts to identify a direct conflict between the state law and the federal rule by emphasizing that federal courts interpret Rule 23 to allow "a would-be class representative with a live claim of her own . . . a fair opportunity to show that certification is warranted." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016). We have held that "when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016). Thus, forcing the settlement of the class representative's claims prevents the representative from "fairly and adequately protect[ing] the interests of the class" and obtaining a class-wide settlement. Fed. R. Civ. P. 23(a)(4), 23(e).

But neither the class representative's duty to represent the class's interests nor the representative's interest in certifying a class exist at the time the pre-suit notice of claim is filed. *Fields*, 201 P.3d at 533. And as soon as the public entity rejects the settlement offer, the claim may proceed unencumbered. *See id.* Because a claim under Arizona law asserted against a public entity does not become "live" until

the notice of claim is filed, *Campbell-Ewald*, 577 U.S. at 165, section 12-821.01(A) does not impinge on a class representative's duties and rights under Rule 23. The provisions "can exist side by side . . . , each controlling its own intended sphere of coverage without conflict." *Walker*, 446 U.S. at 752.

B

Because there is no conflict between the state law and the federal rule, we proceed to determine whether the state law applies in federal court under the *Erie* doctrine. *See Shady Grove*, 559 U.S. at 398.

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Distinguishing between substantive legal rules and the procedures for enforcing those rules is not always easy. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965). The Supreme Court has held that for purposes of *Erie*, the line between substance and procedure must be drawn so as to ensure that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guaranty Tr. Co. v. York,* 326 U.S. 99, 109 (1945)). This "'outcome-determination' test must not be applied mechanically" but instead "must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Gasperini*, 518 U.S. at 428 (quoting *Hanna*, 380 U.S. at 468).

The Supreme Court has demonstrated how this test applies to a statute like section 12-821.01(A). In *Felder*, the

Court held that a similar notice-of-claim statute under Wisconsin law does not apply to federal civil-rights claims. 487 U.S. at 134. In reaching that conclusion, the Court explained that a "state notice-of-claim statute is more than a mere rule of procedure: . . . [It] is a substantive condition on the right to sue governmental officials and entities, and the federal courts have therefore correctly recognized that [such a] notice statute governs the adjudication of state-law claims in diversity actions." *Id.* at 152. So although such a statute does not apply to claims arising under *federal law*, "federal courts entertaining *state-law* claims against [state] municipalities are obligated to apply the notice-of-claim provision." *Id.* at 151 (emphasis added); *see also Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[T]he policy of [*Erie*] preclude[s] maintenance in . . . federal court . . . of suits to which the State ha[s] closed its courts.").

Like the statute at issue in *Felder*, section 12-821.01(A) advances the substantive state interests of "allow[ing] the public entity to investigate and assess liability," encouraging "settlement prior to litigation," and "assist[ing] the public entity in financial planning and budgeting." *Deer Valley*, 152 P.3d at 492 (quoting *Falcon ex rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006)). It also reflects the State's sovereign interest in placing conditions on claims asserted against state entities. *See Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon ex. rel. County of Pima*, 467 P.3d 257, 262 (Ariz. Ct. App. 2020) ("[T]he notice-of-claim statute is, fundamentally, a codification of sovereign immunity."). Declining to apply section 12-821.01(A) would lead plaintiffs to shop for a federal forum free from Arizona's notice-of-claim requirement, producing disparate outcomes between federal and state litigants. *See Gasperini*, 518 U.S. at 430–31. We conclude that the statute applies in federal court. *See Felder*, 487 U.S. at 151–52.

C

Having determined that section 12-821.01(A) applies, we consider whether Ellis satisfied it. Before filing suit, Ellis submitted a notice stating that his claims could be settled under the following conditions: the court's awarding of injunctive and declaratory relief to the class; "monetary relief equal to no less than $1.64 per day . . . per individual" for each day the individual "was charged the discriminatory rates, . . . through and inclusive of the date the injunctive and declaratory relief . . . are fully and finally implemented"; and "attorneys' fees and costs."

That notice was deficient because it did not state "a specific amount for which the claim[s] can be settled." Ariz. Rev. Stat. Ann. § 12-821.01(A). The statute "instructs claimants to include a particular and certain amount of money that, if agreed to by the government entity, will settle the claim." *Deer Valley*, 152 P.3d at 493. Ellis's claim did not do that. Instead, it conditioned settlement on two demands that are impermissible under section 12-821.01(A). First, it stated that Ellis would not settle even his individual monetary claim without a grant of injunctive relief to the entire class. It therefore did not specify how Ellis's "*individual* claim [could] be settled." *Fields*, 201 P.3d at 534 (emphasis added). Second, the requested monetary relief was not "a particular and certain amount of money" but instead an amount "no less than" the amount to be calculated using a formula that depended on the not-yet-specified number of class members and the not-yet-determined date on which injunctive and declaratory relief might be awarded. *Deer Valley*, 152 P.3d at 493; *see id.* at 494 (plaintiff may not demand an "estimated value").

Ellis argues that section 12-821.01(A) does not apply to his claims for declaratory and injunctive relief. He did not

raise that argument below, so we decline to consider it now. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (arguments raised "for the first time on appeal" are forfeited).

## III

We turn next to the federal equal protection claim. Because Ellis brought that claim under 42 U.S.C. § 1983, it is subject to the limitations period for personal-injury claims under state law, which in Arizona is two years. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); Ariz. Rev. Stat. Ann. § 12-542. The period starts to run when the claim accrues. *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019). Federal law governs the accrual of a section 1983 claim, and a cause of action accrues "when the plaintiff knows or has reason to know of the actual injury" that is the basis for the action. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051 (9th Cir. 2008); *accord Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).

The district court held that Ellis's claim was untimely because the claim accrued—and thus the statute of limitations began to run—when SRP approved the E-27 plan in February 2015. But at that point, the plan had not yet caused Ellis any injury, so he could not have "know[n] or ha[d] reason to know of the actual injury." *Lukovsky*, 535 F.3d at 1051. The injury occurred only when Ellis received a bill under the new rate structure. Indeed, Ellis suffered a new injury with each monthly bill, which means that a new claim arose each month. *See Flynt*, 940 F.3d at 462.

In concluding that all of the claims were untimely, the district court relied on *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002), in which we held that

the statute of limitations runs from the "'operative decision'" and not from its "inevitable consequences that are not separately actionable." *Id.* (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). That case involved a challenge to an abatement proceeding brought by a city; although the commencement of the action was outside the statute of limitations, the plaintiff argued that later events in the proceeding, such as holding a hearing, had restarted the limitations period. *Id.* We rejected that argument because those later events, although injurious, were not themselves actionable. *Id.* For example, holding a hearing in a proceeding that had already begun "was not a separately unconstitutional act." *Id.* The cases on which SRP relies are similar: They involved challenges not to new wrongful acts, but rather to the inevitable—and not independently unlawful—consequences of the operative, time-barred decision. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (holding that subsequent denials of client visits based on the permanent suspension of attorney's visitation rights did not restart the limitations period); *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 239 (9th Cir. 1987) (holding that each phase of a single enforcement action does not give rise to new, actionable overt acts).

Our analysis of the limitations issue here parallels that of courts in Title VII cases. *See Cherosky v. Henderson*, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003) (explaining that precedent governing the Title VII statute of limitations "applies with equal force . . . to actions arising under" section 1983); *RK Ventures*, 307 F.3d at 1059. In *Bazemore v. Friday*, 478 U.S. 385 (1986), for example, the Supreme Court held that each paycheck issued under a racially discriminatory pay structure is an independent violation of Title VII that supports an independent claim and starts the running of the limitations period for that claim. *Id.* at 395–

96 (Brennan, J., joined by all other Members of the Court, concurring in part). As the Court later explained, an employer "can surely be regarded as intending to discriminate on the basis of race as long as the [facially discriminatory] structure is used," so "the employer engage[d] in intentional discrimination whenever it issue[d] a check to one of these disfavored employees." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 634 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

Applying that principle to the facts of this case requires us to distinguish among the individual named plaintiffs, whose circumstances vary somewhat. Ellis's claim is that the difference in rates between solar customers and other customers violates the Equal Protection Clause; on that theory, it is *charging* the rates—not merely announcing them—that constitutes the constitutional violation. Thus, the dates on which customers were charged rates under the plan are significant in determining the timeliness of their claims. Ellis, Dill, and Gustavis all sued within two years of first being charged under the E-27 price plan, so their claims are timely as to all charges incurred. Rupprecht, however, did not sue within two years of becoming subject to the E-27 plan, but he was charged under it within the limitations period. His claims, therefore, are timely only as to charges incurred within two years of suing.

Ellis suggests that all of the named plaintiffs' claims are timely because SRP's conduct constituted a "continuing violation." As we have explained in prior cases, however, that term can be somewhat misleading. What Ellis alleges is not "one on-going violation," but instead "a series of repeated violations," each of which "gives rise to a new cause of action" and thereby "begins a new statute of

limitations period as to that particular event." *Flynt*, 940 F.3d at 462 n.3 (quoting *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994)). In the past, we recognized a broader "continuing violations doctrine" under which a plaintiff alleging a series of related acts, some of which occurred within the limitations period, could recover for all of the acts, including those that occurred before the limitations period. *See Cherosky*, 330 F.3d at 1246. But the Supreme Court largely eliminated that doctrine when it held in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113; *see Bird v. Department of Hum. Servs.*, 935 F.3d 738, 746–48 (9th Cir. 2019). Where, as here, a plaintiff alleges "claims based on discrete acts," the claims "are only timely where such acts occurred within the limitations period." *Cherosky*, 330 F.3d at 1246.

We emphasize that it remains disputed whether the bills issued to Ellis are in fact unlawful. SRP urges us to affirm the dismissal of the equal protection claim on the alternative ground that the distinctions drawn by the E-27 plan are supported by a rational basis and are therefore permissible. But the district court did not address that theory, and we decline to do so in the first instance. Instead, we leave it to the district court to consider on remand.

IV

That leaves the federal antitrust claims. Ellis asserts claims for monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2. The district court dismissed those claims for failure to allege antitrust injury. Along the way, the district court also concluded that the filed-rate doctrine and state-action immunity do not bar Ellis's claims and that the Local Government Antitrust Act

shields SRP from federal antitrust damages. We reverse the district court's holding on antitrust injury and affirm its other rulings.

A

A private antitrust plaintiff "must prove the existence of '*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). We have identified "four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999).

The district court believed that Ellis did not adequately allege antitrust injury. In its view, the E-27 price plan actually "*encourages* competition in alternative energy investment by allowing for new market entrants with its higher prices." Emphasizing that "solar energy systems are *still* uneconomical," the district court concluded that SRP's "alleged anticompetitive conduct . . . did not cause [Ellis's] injury because [he] would have been harmed anyway from using an uneconomical product."

The district court's findings that SRP's price plan promotes competition and that Ellis cannot establish causation are inconsistent with its uncontested conclusion that Ellis adequately alleged exclusionary conduct designed "to (1) deter the competitive threat of solar energy systems; (2) penalize solar energy investments to fortify [SRP's]

monopoly; (3) and force consumers to exclusively purchase electricity from [SRP] by making solar energy system installation uneconomical." By the district court's own logic, solar-energy systems are uneconomical, at least in part, because of SRP's exclusionary conduct.

On appeal, SRP does not attempt to defend the district court's reasoning. Instead, it argues that Ellis has not adequately alleged antitrust injury because he paid the higher rate before SRP could succeed in fully displacing competition. SRP also contends that Ellis cannot claim to have been injured by exclusionary conduct because he has attempted to use the market alternative that he claims SRP tried to make uneconomical.

Both of those theories are flawed because "[c]oercive activity that prevents its victims from making free choices between market alternatives" gives rise to antitrust injury. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003) (quoting *Amarel v. Connell*, 102 F.3d 1494, 1509 (9th Cir. 1996)). To adequately plead antitrust injury, a plaintiff need not allege that the exclusionary conduct has succeeded in displacing all competition. *See id.* at 376; *cf. Brunswick*, 429 U.S. at 489 n.14 ("[C]ompetitors may be able to prove antitrust injury before they actually are driven from the market and competition is thereby lessened."). Rather, the plaintiff need only "show that diminished consumer choices and increased prices are the result of a less competitive market due to either artificial restraints or predatory and exclusionary conduct." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). That is precisely what Ellis alleges: He was "directly and economically hurt by" SRP's exclusionary pricing scheme, which is aimed at suppressing competition by discouraging customers from installing solar-energy systems. *Glen Holly*, 352 F.3d at 376.

Ellis's injury was caused by a scheme "inten[ded] to harm competition by increasing prices," and his injury "flows from that which makes [the conduct] unlawful." *American Ad Mgmt.*, 190 F.3d at 1056.

The Supreme Court's decision in *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), is instructive. That case involved a challenge to "a group health plan's practice of refusing to reimburse subscribers for psychotherapy performed by psychologists, while providing reimbursement for comparable treatment by psychiatrists," in order to "restrain competition in the psychotherapy market." *Id.* at 467. The plaintiff, McCready, "did not yield" to that "coercive pressure" and paid out-of-pocket for treatment from a psychologist. *Id.* at 483. Much like SRP, Blue Shield argued that McCready could not establish antitrust injury because her injury was not a direct consequence of "the competitive advantage" that Blue Shield bestowed on psychiatrists, and she did not "claim that her psychologists' bills [were] higher than they would have been had the conspiracy not existed." *Id.* at 481. The Supreme Court rejected that argument because McCready's injury was "inextricably intertwined with the injury the conspirators sought to inflict on psychologists and the psychotherapy market." *Id.* at 484. The Court therefore held that the injury "'flows from that which makes defendants' acts unlawful' within the meaning of *Brunswick*." *Id.*

So too here. The increased prices that SRP imposed on solar customers are "inextricably intertwined with"—indeed they are the means of—SRP's allegedly unlawful scheme to reduce solar-energy competition. *McCready*, 457 U.S. at 484. SRP cannot escape liability by portraying Ellis's injury as mere collateral damage of its exclusionary conduct. Ellis alleges "a purposefully anticompetitive scheme" and

"seeks to recover as damages the sums lost to [him] as the consequence of [SRP's] attempt to pursue that scheme." *Id.* at 483 (emphasis omitted). He adequately alleges antitrust injury.

B

SRP asserts several common-law and statutory defenses. We begin with the filed-rate doctrine, which "is a judicially created rule that prohibits individuals from asserting civil antitrust challenges to an entity's agency-approved rates." *Wortman v. All Nippon Airways*, 854 F.3d 606, 610 (9th Cir. 2017). The filed-rate doctrine can bar federal antitrust claims based on rates approved by state agencies. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 992 (9th Cir. 2000); *see also Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir. 1994) ("[C]ourts have uniformly held . . . that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies.").

The problem for SRP, however, is that it does not file its rates with anyone other than itself. SRP's board of directors sets rates unilaterally; unlike other Arizona utilities, SRP is not regulated by the Arizona Corporation Commission. While it is true that "[w]e have previously applied the filed rate doctrine to circumstances in which the relevant rates were not literally filed," we have nevertheless required that some agency—not merely the entity charging the rates— "engage[] in sufficient regulation through other means to satisfy the purposes of the doctrine." *Wortman*, 854 F.3d at 614. But no agency regulates SRP.

SRP focuses on the fact that its unilateral ratemaking authority, granted to it by the State, allows it to set rates that are "just and reasonable," Ariz. Rev. Stat. Ann. § 30-805(A)(1); *see id.* §§ 48-2334, 30-802. In this respect, SRP

argues, its authority is comparable to that of the Federal Energy Regulatory Commission, which has authority to ensure that rates for the sale of electricity and natural gas within its jurisdiction are just and reasonable. *See* 15 U.S.C. § 717c (natural gas); 16 U.S.C. § 824d (electricity). Rates approved by the Commission are subject to the filed-rate doctrine. *See Entergy La., Inc. v. Louisiana Pub. Serv. Comm'n*, 539 U.S. 39, 47 (2003); *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). But SRP's analogy is flawed because FERC regulates the rates charged by market participants, while SRP is a market participant itself, and as we have explained, no agency regulator is tasked with ensuring that SRP follows Arizona's statutory directive.

The filed-rate doctrine presumes at least some degree of independent oversight: It applies only so long as an agency "continues to engage in regulatory activity and has not effectively abdicated its rate-making authority." *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1040 (9th Cir. 2007) (internal quotation marks omitted). For example, although the doctrine applies to FERC-authorized market-based rates—which are not literally "filed" with FERC— that is because FERC grants market-based-rate authorization only after reviewing the market and determining it to be competitive, and FERC retains authority to exercise "ongoing oversight of the market." *Id.* at 1042.

We have never extended the filed-rate doctrine to unilateral, unsupervised rate-setting by a market participant. In that context, there is no reason to presume that "rates are just and reasonable as a matter of law" and should be immune from collateral challenge. *E. & J. Gallo Winery*, 503 F.3d at 1040. We decline to extend the doctrine here.

C

We also reject SRP's claim that it is entitled to state-action immunity. The doctrine of state-action immunity recognizes that "'nothing in the language of the Sherman Act or in its history' suggested that Congress intended to restrict the sovereign capacity of the States to regulate their economies," so "the Act should not be read to bar States from imposing market restraints 'as an act of government.'" *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224 (2013) (quoting *Parker v. Brown*, 317 U.S. 341, 350, 352 (1943)). The doctrine is "disfavored," however, and applies "only when it is clear that the challenged anticompetitive conduct is undertaken pursuant to a regulatory scheme that 'is the State's own.'" *Id.* at 225 (first quoting *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992); and then quoting *id.* at 635). Where, as here, the "allegedly anticompetitive conduct [is] undertaken by a substate governmental entity," then immunity applies only if the challenged conduct is "undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* at 225–26 (quoting *Community Commc'ns Co. v. Boulder*, 455 U.S. 40, 52 (1982)). "[T]he ultimate requirement [is] that the State must have affirmatively contemplated the displacement of competition such that the challenged anticompetitive effects can be attributed to the 'state itself.'" *Id.* at 229 (quoting *Parker*, 317 U.S. at 352); *accord Chamber of Com. of the U.S. v. City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018).

State-action immunity is inapplicable here because the State of Arizona has not articulated a "policy to displace competition." *Phoebe Putney*, 568 U.S. at 226. To the contrary, the district court correctly observed that Arizona's "statutes signal a shift by [the] legislature to *promote*

competition in the retail electricity market," not to curtail it. For example, Arizona has declared "that the most effective manner of establishing just and reasonable rates for electricity is to permit electric generation service prices to be established in a competitive market." Ariz. Rev. Stat. Ann. § 40-202(D). The State requires public power entities to "open their entire service territories to competition to electricity suppliers certificated by the [Arizona Corporation Commission]," *id.* § 30-803(A), and prohibits them from charging their competitors discriminatory rates to use their facilities, *id.* § 30-805(E). It requires public power entities to "adopt a code of conduct to prevent anticompetitive activities," *id.* § 30-803(F), and to establish "terms and conditions for competition in the retail sale of electric generation service," *id.* § 30-802(B)(1)(a). It prohibits public power entities from calculating rates so as to offset "[a]ny reduction in electricity purchases . . . resulting from self-generation." *Id.* § 30-805(D). And it subjects providers of "competitive electric generation service" to its antitrust laws. *Id.* § 30-813. As SRP concedes, this statutory framework expresses a general policy favoring competition.

Nevertheless, SRP claims that the displacement of competition is a natural consequence of its authority to set "just and reasonable" rates. But "state-law authority to act is insufficient to establish state-action immunity; the substate governmental entity must also show that it has been delegated authority to act or regulate anticompetitively." *Phoebe Putney*, 568 U.S. at 228, 234. SRP responds that rate-setting is "inherently anticompetitive." Arizona specified just the opposite, however, when it declared "that the most effective manner of establishing just and reasonable rates for electricity" is not for SRP to set them anticompetitively but instead for them "to be established in a competitive market." Ariz. Rev. Stat. Ann. § 40-202(D).

SRP further argues that despite section 30-803(A)'s call for public power entities to "open their entire service territories to competition," the Arizona Corporation Commission has yet to certify any competitors, suggesting that Arizona left it to the regulator's discretion whether to allow competition and the regulator simply decided not to do so. *Cf. California CNG, Inc. v. Southern Cal. Gas Co.*, 96 F.3d 1193, 1197, 1200 (9th Cir. 1996). But Arizona did not leave it to the Commission to determine "the need for th[e] market to develop into a competitive one." *Id.* at 1197. It provided that power entities "*shall* open their entire service territories to competition." Ariz. Rev. Stat. Ann. § 30-803(A) (emphasis added). The Commission is merely tasked with certifying prospective suppliers. *Id.* Even if "[t]he sort of competition [Arizona law] envisions has yet to emerge on the scale the legislature hoped," Arizona has clearly "expresse[d] a policy preference for competition in electricity generation and supply." *Kay Elec. Coop. v. City of Newkirk*, 647 F.3d 1039, 1045 (10th Cir. 2011) (Gorsuch, J.). That state policy prevents SRP from invoking state-action immunity.

## D

Finally, we consider whether the Local Government Antitrust Act shields SRP from antitrust damages. The LGAA precludes the recovery of antitrust damages "from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). A "local government" includes "a school district, sanitary district, or *any other* special function governmental unit established by State law in one or more States." *Id.* § 34(1)(B) (emphasis added). SRP was established by Arizona law as an "agricultural improvement district" and is "a public, political, taxing subdivision of the state." Ariz. Rev. Stat.

Ann. § 48-2302. As such, it is a "special function governmental unit" that is exempt from antitrust damages. 15 U.S.C. § 34(1)(B).

In resisting this conclusion, Ellis relies exclusively on the LGAA's legislative history. First, he notes that electric utilities are not listed in a committee report among other "special purpose political subdivisions" including "planning districts, water districts, sewer districts, irrigation districts, drainage districts, road districts, and mosquito control districts." H.R. Rep. No. 98-965, at 19–20 (1984). But "[i]f the text is clear, it needs no repetition in the legislative history," and therefore "silence in the legislative history . . . cannot defeat the better reading of the text." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018). In any event, water utilities are referenced in the report, and SRP provides both water and electric service.

Second, relying on the same report, Ellis contends that Congress intended to prevent "payment of any antitrust judgment . . . from the 'general revenues,' thus shifting the burden . . . to the 'innocent' taxpayers," and that no such concern exists here. H.R. Rep. No. 98-965, at 11. Even if that was the principal concern motivating the enactment of the LGAA, the text does not limit the statute's scope to contexts in which that concern is present. "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

We conclude that the LGAA shields SRP from federal antitrust damages. Because Ellis also seeks declaratory and injunctive relief, and the LGAA does not bar those forms of

relief, we remand to the district court for further proceedings.

The parties shall bear their own costs on appeal.

**AFFIRMED in part**, **REVERSED in part, and REMANDED.**